FREDERICK EDWARDS and Others, Plaintiffs, *v.* THE TOWN OF LAKE PLEASANT and Others, Defendants.

Supreme Court, Hamilton County, June 10, 1930.

*Charles S. Nisbet,* for the plaintiffs.

*Miller & Beyerl* and *John E. Kelly,* for the defendants.

HEFFERNAN, J. This is an application to continue a temporary injunction order *pendente lite* restraining defendants from paying from the funds of the town of Lake Pleasant any salary for services of a town physician.

On August 21, 1921, the town board of the town of Lake Pleasant, which contains the incorporated village of Speculator, at which time there was no practicing physician residing therein, established the office of town physician, made an appointment thereto and fixed the salary. The physician so appointed established a residence at Speculator and has since continued to reside and practice his profession therein.

Section 141-b of the Town Law (added by Laws of 1913, chap. 413, as amd. by Laws of 1929, chap. 352), so far as material, here provides: " The town board of any town containing a village, whether incorporated or not, or a hamlet in which there is not a practicing physician residing may at a special meeting called for that purpose, establish the office of town physician and fix the salary of such physician and appoint to the office so created a duly qualified physician upon condition that he shall reside in such village or hamlet, or may combine with an adjoining town in the employment of such physician who shall reside in either of the towns so combined."

On December 27, 1929, the town board assumed to appoint another physician to the office in question. Thereupon plaintiffs instituted this action to restrain defendants from paying from the public moneys any salary to the physician so appointed for his services as town physician. A temporary injunction was granted to accompany the service of the summons.

It is apparent that the object of this statute is to provide sparsely settled communities with a resident physician. The statute expressly makes it the duty of the physician so appointed to render medical relief to poor persons residing in the town when directed so to do by the superintendent of the poor of the county in which the town is situated. The power of the local authorities to establish such an office is not dependent, however, upon the fact that there are poor persons within the town. Obviously in addition to his salary the physician is entitled to be paid by those who are able for professional services rendered to them. The provision in question is the result of the Legislature's recognition of the need of a physician's services in every community. Where there is a resident physician there is no justification for the creation of this

office. Where the emergency exists the town board is authorized to act.

Defendants contend that the office having been created continues until expressly abolished by the town board. It seems to me that this view is erroneous. The town officials are authorized in their discretion to determine whether or not such an office shall be created. That does not mean that the office must of necessity be continued until formally abolished. The Legislature has not declared in express terms how this office shall be abolished. An office need not be abolished, however, in express terms when the intent of the Legislature so to do is shown by a construction of the statute as a whole. An office may be abolished indirectly as well as directly. Presumably all public offices are created for the public good. The Legislature in the absence of constitutional limitation may create and abolish offices at its pleasure. If defendants' contention is correct the office might be continued irrespective of the number of physicians who might establish residences in the town. Evidently this was not the legislative intent. The office continues only so long as the emergency to which the law owes its existence remains in force. By implication it is abolished when there is a resident physician. Any other construction would result in a waste of the public funds. Therefore, so long as a physician resides and practices his profession in the town no justification exists for the importation of another physician at public expense.

The injunction order is, therefore, continued.